GARDINER *vs.* HOPKINS.

Where a *printer* had printed a law-book for a bookseller, and had delivered all of the work except a few *signatures*, (viz. sheets of eight pages,) and the bookseller *failed* and assigned the work to a third person, and the printer delivered up the remaining sheets on the *promise* of such third person that he would see the printer paid the amount of his bill, *it was held* that the promise was binding, although not reduced to writing, and notwithstanding that the printer had *no lien*.

ERROR from the New-York common pleas. Hopkins sued Gardiner in the common pleas, and declared that one Charles Wiley, being indebted to him in a large sum of money, to wit, &c. for work and labor, care and diligence in the printing of a certain book, the sheets of which book, or some part thereof, were in the possession of the plaintiff as his security for the payment of the said sum, the defendant promised to pay the plaintiff such sum so owing to him by Wiley, in consideration of the plaintiff's delivering to Wiley the sheets of the book remaining in his possession ; averring a delivery of the same to Wiley, and notice to the defendant, whereby, &c. The declaration contained also the common money counts. The defendant pleaded the general issue. On the trial of the cause, the following facts appeared : The plaintiff printed a law work for Wiley. Shortly after it was finished, Wiley failed and assigned his property. At the time of his failure, four or five signatures (or sheets of eight pages each) remained in the hands of the plaintiff. The assignment was made to one Thompson, giving a preference in payment first to Thompson and next to the defendant, who was a principal creditor of Wiley. The defendant took the management of the estate of Wiley, and being desirous to obtain the remaining sheets of the work printed by the plaintiff, so as to complete the volume, did obtain them through the agency of a workman employed in the store formerly Wiley's, who testified that he was authorized by the defendant to tell the plaintiff that if he would give up the sheets, he (the defendant) would see him paid the amount of his bill, and that upon giving such assurance to the plaintiff, he delivered the sheets to him. Previous to this the plaintiff had refused to deliver up the signatures until his bill was

paid, as Wiley had failed. The plaintiff produced an account, charging the estate of Wiley $233,25 for the work, noting at the bottom, "at four months credit." The value of the work was proved, and the plaintiff rested. The defendant moved for a nonsuit, on the ground that the promise being collateral and not in writing was void. The judge ruled that the promise was an original undertaking, and the nonsuit was denied. The defendant then proved a conversation between him and the plaintiff, in which the plaintiff told him, in answer to an inquiry of the defendant what was the contract of the plaintiff with Wiley, that he had done work for Wiley usually at four and eight months, but Wiley would sometimes pay before, and sometimes he gave a longer credit; that there had been no precise contract in this case, and that the work was done on the usual terms of dealing between them. The defendant also gave evidence impeaching the testimony of the witness who had obtained the remaining sheets from the plaintiff, and the plaintiff gave evidence supporting his testimony. The work printed by the plaintiff was not included in the assignment to Thompson, and subsequent to the sale of it to a bookseller for $600, Wiley transferred his interest in the proceeds of the contract to the defendant, from which he received upwards of $500. Wiley died previous to the trial of the cause, and his widow proved that a few weeks before his death he told the defendant that the plaintiff must be paid, but what answer was made by the defendant, if any, was not shewn. The evidence being closed, the defendant insisted that the work had been done by the plaintiff *on a credit of four months,* and consequently, the plaintiff having no lien upon the property, the promise to pay was void for the want of consideration; but the presiding judge ruled and charged the jury that the account produced by the plaintiff, stating the work to have been done at four months credit, in connection with the other testimony in the case, was not conclusive evidence of that fact, and that it was for them to determine whether a *credit* was agreed upon or not. The defendant excepted to the several decisions of the judge, and the plaintiff had a verdict, on which judgment was entered.

*E. Livingston,* for plaintiff in error.

*S. M. Hopkins,* for defendant in error.

*By the Court,* MARCY, J. If, on the examination of the facts contained in the bill of exceptions, we should think the verdict was against the weight of evidence, that would not be a ground to reverse the judgment in the court below. We are to review the questions of law presented by the record, and examine the facts only with a view to come at a proper understanding of the questions of law.

It was fairly left to the jury to say whether the defendant below actually made the promise set forth in the declaration, and they found that he did make it. On the assumption of this fact, his counsel urged to the court on the trial, that the promise, according to the evidence on the part of the plaintiff, was merely a collateral undertaking for Wiley's debt, and, to be binding on the defendant, should be evidenced by writing. The court decided that it was an original contract between the parties, and sustained by a sufficient consideration—the delivery by the plaintiff to the defendant of several signatures of the book which he had printed for Wiley, upon which he had a lien. The defendant then attempted to shew that the plaintiff below had in fact no *lien.* The proof shewed that the plaintiff usually worked for Wiley on a credit, but for the work in question, there was no specific contract, as appeared by the declaration of the plaintiff proved by the defendant. The plaintiff claimed to retain the property for his debt against Wiley, and refused to give it up till he obtained the defendant's undertaking for his debt. Wiley, before he died, told the defendant that the plaintiff must be paid. The judge thought there was evidence enough to carry the question, whether the plaintiff had or had not a lien, to the jury. The evidence to counteract that given shewing that the work was done on a credit was slight, but not so slight, I apprehend, that we should be justified in considering it as none at all. If there was proof on both sides of the question, we cannot say there was error in submitting the matter of fact to the jury.

It was urged, on the argument, that there was sufficient consideration for the promise, if the plaintiff had in fact no lien. He had the possession, and asserted a claim to the property. This claim was not regarded even by the defendant himself as wholly idle; for, by the testimony of one of his own witnesses, he offered to give something to remove it. Besides, the defendant derived an immediate benefit from what he got as the consideration of his promise.

I am inclined to think the promise binding, under the circumstances of this case, though there was no lien.

Judgment affirmed.