*434
 
 Bacon, J.
 

 (Dissenting.) This case presents a single question, and a proposition apparently so simple that the first emotion is perhaps one of surprise that there could be any question in regard to it, since, in the multitude of decisions with which the books are filled touching the construction of the statute of frauds, it would seem that the rule applicable to a case which, in its essential features, must so often have arisen, must be settled by authority. My own conviction is, that the rule which governs this case has been long and well established, in opposition to the conclusion of the referee and the judgment of the Supreme Court; but, at the same time, it may readily be admitted that reservations and doubts have been suggested, and discriminations attempted, from time to time, that, if they have served no other purpose, have at least involved the matter in" some obscurity.
 

 “ Every special promise to answer for the debt, defatdt or miscarriage of another person,” the statute declares “ shall be void, unless such agreement, or some note or memorandum thereof/expressing the consideration, be in writing and subscribed by the party to be charged therewith.” (2 R. S., 135, § 2.) This statute, as is well known, is an almost literal transcript of the English statute of frauds (29 Charles II., ch. 3); the only noticeable change being, that in our statute the consideration is required to be expressed in the writing. This, however, so far as the construction of the two statutes is concerned, is of no special moment, inasmuch as the courts, both in England and in this State, had held, before the words were' inserted in the section as it now stands, that it was necessary to a valid agreement that the consideration should, in some terms, be incorporated therein. Whatever, then, has, by the course of adjudication in England upon this clause of the Statute, been deemed or acquiesced in as the settled law, must be accepted, with us, as controlling authority, unless, upon due consideration, and by the solemn judgment of some court whose decisions are recognized, any peculiar and special construction has been questioned or repudiated.
 

 
 *435
 
 It would probably have been better if there had been less of what may, perhaps, without irreverence, be called legal, and even judicial tampering with the words of the statute, to force, at times, a construction seemingly at war with its natural and more obvious import. But all regrets on this subject are vain, since the business of construction began with the infancy of the law, and has not yet ceased, and will doubtless attend it even down to old age. One of the earliest attempts to create and define a distinction by which agreements were to be held within, or without, the scope of the statute, was to express them by the terms “ original” and “ collateral.” It is true that neither of these words is to be found in the statute, but they have been so long employed in connection with it as to have attached to them an established and recognized meaning; and the struggle always is, in determining the validity of such an agreement as seems to fall within the general purview of the law, to ascertain whether it is collateral and ancillary to the principal contract, having no aliment whatever independently of that, or whether it can be sustained and enforced as an independent, original undertaking, altogether outside of, and, therefore, not needing to be evidenced by, the written agreement required by the statute.
 

 An attempt was made, as early as 1811, by .Chancellor Kent, then Chief Justice of the Supreme Court, in the well known case of
 
 Leonard
 
 v.
 
 Vredenburgh
 
 (8 John., 29), to arrange into three classes the cases where a promise, to be answerable for the debt of another, was within, or without, the statute. They are familiar to the profession, and for a long time stood their ground as a just exposition of the law. The third class, in which he held that a promise to pay the debt of another was not within the statute “when it arose out of some new and original consideration of benefit or harm moving between the newly contracting parties,” has been subjected to much criticism; and it may be fairly admitted that it is not now, in the naked and unqualified terms in which it is expressed, to be received as the true construction of the statute. And yet this rule did obtain, and was followed in several well considered cases in
 
 *436
 
 our own courts. ■ Thus, in
 
 Farley
 
 v.
 
 Cleveland
 
 (4 Cow., 432), the classification of Kent was stated and reaffirmed, and the case then- on argument held to fall within his third class; and the court lay down the broad proposition, that, where a promise to pay the debt of a third person arises out of some new consideration of benefit to the promisor, or harm to the promisee, moving to the promisor either from the promisee or the original debtor, such promise is not within the statute. And it is - added, that this is so, although the original debt 'still subsists, and is entirely unaffected by the new agreement. This case ;was carried up to the Court of Errors, and was there affirmed. (9 Cow., 639.) The doctrine of the Supreme Court is reiterated in the. precise language of the marginal note in the 4th of Cowen, and by an entirely undivided court; the report merely stating that Jones, Chancellor, examined the question, and was of opinion that the judgment should be affirmed; “whereupon,
 
 per totam curiam,
 
 the judgment was affirmed.”
 

 In
 
 Meech
 
 v.
 
 Smith
 
 (7 Wend., 315), the same rule is again repeated, and the court say that it has long been settled, that, ■ although the promise be by paroi, yet, if it arises out of some new and original consideration of benefit or harm moving between the newly contracting parties, the case is not within 'the statute. Alluding to
 
 Leonard
 
 v. Vredenburgh, and the above ■cited case of
 
 Farley
 
 v.
 
 Cleveland,
 
 the court say: “ This rule has been recognized by ’all writers upon contracts, and by the •highest court in the State, and is, therefore, as much, the law •'of the land as’the statute itself.” The authority of
 
 Leonard
 
 v.
 
 Vredenburgh,
 
 and especially the third class of Chancellor Kent, has been cited approvingly and followed in the courts of several of our sister States; and in the case of
 
 De Wolf
 
 v.
 
 Rabaud
 
 (1 Peters, 476), the judgment of the Supreme Court of the United States proceeded substantially upon an affirmance of the authority of
 
 Leonard
 
 v.
 
 Vredenburgh,
 
 as a just construction ■of the statute of this' State.
 

 If these cases are to be received as approved law at the present day, they decide more than enough to reverse the judgment now before us; and there need be no'further exami
 
 *437
 
 nation of authorities upon the discussion which this case has opened. But it is important to a j ust appreciation of the ground, upon which, as I suppose, the agreement • in this case, and the consequent right of the plaintiff to recover, is to be upheld, to notice the several cases in which the discrimination between original and collateral promises has been established, or affirmed, by the courts. This discrimination will be found to exist, I think, and the requirements of the statute not to apply, under four conditions, within some one of which most of the authorities upon this particular section of the statute, and which, in some respects, have been thought to conflict with each other, may be arranged.
 

 1. Where the primary agreement has been in effect extinguished, and the promise superseded, by the new agreement and promise which have taken their place, and the credit isl given wholly to the new promisor.
 

 2. Where a fund has been provided, or property has been placed in the hands of the newly contracting party, from which the means are to be procured to pay, or the promisor derives an equivalent or advantage therefrom.
 

 3. Where the purport and intent of the agreement is to accomplish the payment of the promisor’s own debt, although the effect is to pay the debt of another, and where that debt is used to measure the extent of the liability, as where A owes B, and 0 is indebted to A, and in consideration of that liability promises, at A’s request, to pay B the debt A is owing him.
 

 4. " Where the creditor, in consideration of the promise, surrenders some pledge, or relinquishes some lien actually held by him and capable of enforcement, and by means of which the original debt was rendered secure.
 

 In all these classes, excepting the first, it does not affect the liability of the" newly contracting party that the original debt subsists and the liability of the debtor remains in full force. Wherever the conditions exist which I have arranged under these four heads, there is not only a sufficient consideration for the promise to pay another’s debt, but the promise is good although by paroi.
 

 
 *438
 
 Numerous illustrations might be gathered from the authorities under these several heads; and although it must be admitted that the current of decisions is not uniform, and some apparently irreconcilable cases may be found, I am persuaded that a careful sifting of the facts, and an attention to the proper discriminations which should be made, would reconcile many which stand seemingly in conflict, and in the result make this branch of the law more 'homogeneous and reliable. At present, however, it only concerns us to trace the course of decisions which have established the distinction expressed under the fourth head of exceptions to the operation of the statute; and if it shall be found, as I think it will, a distinction fully recognized and upheld by a long and almost unbroken series of decisions, the right of the plaintiff to recover - upon the facts of this case will be put beyond question.
 

 And, first, as to the condition of the English law upon this subject. One of the earliest cases to be found in the books is
 
 Tomlinson
 
 v.
 
 Gill,
 
 decided by Lord Hardwicke, in 1756, and reported in Ambler, 330. That case was briefly this: Gill, the defendant, promised the widow and administratrix of the intestate that, if she would permit him to be joined with her in the letters of administration, he would make good any deficiency of assets to discharge the debts of the intestate; and the action was brought by a creditor to enforce that agreement. The defendant insisted that the promise was void by the statute of frauds. It was holden to be not within the statute. Here was the relinquishment by the widow of a part of her exclusive lien upon and interest in the goods and effects of her husband, and which were a fund in her hands for the payment of the debts of the estate, and the defendant, by the agreement, acquired that interest. Lord Habdwicke goes even further than this in his decision, wherein he says it is not within the statute, “for there is,” he adds, “a distinction between a ' promise to pay the original debt and on the foot of the original contract, and where it is on a new consideration. Here is quite a new consideration.”
 

 
 *439
 
 There is a short case reported in Salkeld, standing apparently upon the same ground. It was to this effect: The sheriff took goods upon an execution, and a stranger promised the officer to pay the debt in consideration that he would restore them. The action was brought upon that promise, and on demurrer it was held to be a good consideration. Ho benefit, so far as the case discloses,, accrued to the promisor, the goods being restored, to the debtor; but the consideration which upheld the promise, and which was good as an original undertaking, was the relinquishment of the lien which the sheriff had upon the property by virtue of the levy under his execution.
 
 (Love's
 
 case, 1 Salk., 28.) It is true that the statute of frauds is not called in question in this decision, but the case clearly presented that objection, which would, beyond doubt, have been urged if either the counsel or the court had deemed it tenable.
 

 The next case, and the one, perhaps, most frequently cited and commented on in connection with the particular question we are considering, is
 
 Williams
 
 v.
 
 Leper
 
 (3 Burr., 1886), and reported also more briefly in 2 Wilson, 308, The case was tried before Lord Mansfield, at G-uildhall, and a verdict taken for the plaintiff upon the following state of facts: One Taylor was indebted to the plaintiff in the sum of £45 for rent of premises he held of him as his landlord. Taylor, becoming insolvent, conveyed his property to the defendant, Leper, for the benefit of his creditors. Leper took possession, when the plaintiff came, as landlord, to distrain for the rent due him; whereupon Leper promised that, if he would desist from dis-training, he would pay the debt. The plaintiff, accordingly,, in consideration of this promise, refrained from enforcing his • distress, and the action was brought upon that agreement. In the Court of King’s Bench, all the judges gave brief opinions. Lord.Mansfield said, emphatically: “The case has nothing to do with the statute of frauds. The landlord had a legal pledge. He enters to distrain, and has the pledge in his custody. The defendant agrees that the goods shall be sold, and the plaintiff be paid in the first place. The goods are the fund.
 
 *440
 
 Leper was -obliged to pay the landlord, who had the prior lien.” The other judges concurred in the result; but Justice Aston was inclined to put it upon the footing that the goods were a fund and Leper the bailiff of the landlord, and when he had sold the goods the money was in his hands substantially as the landlord’s agent. The case may, perhaps, be safely maintained upon that special ground, and is thus an authority within what I have ventured to designate as the second class of promises not within .the statute; but I think the language of Lord' Mansfield presents very clearly the ground of the distinction to be, that the plaintiff had, in consequence of the promise of defendant, relinquished a lien operative and efficient to produce satisfaction of the debt, and that it is a very ample authority to support the validity of such a promise upon that consideration.
 

 The case of
 
 Houlditch
 
 v.
 
 Milne
 
 (3 Esp., 86), presents the point more clearly, and is a very decisive authority on the proposition we are discussing. The plaintiff had repaired carriages for one Oofey, and charged the account to him. The defendant sent an order to have them packed and sent on board a ship, and promised to pay the bill. On the trial, the defendant’s counsel asked that the plaintiff be nonsuited, on the ground that the promise being to pay a debt of Oofey, who was himself liable, and not being in writing, it was void by the statute. But Lord Eldon refused to nonsuit the plaintiff, and held that, it was an original undertaking. He cited the case of
 
 Williams
 
 v. Leper, saying that it appeared to apply precisely to the case then before him. “The plaintiff,” he adds, “ had, to a certain extent, a lien upon the carriages, which he parted with on the defendant’s promise to pay. This took the case out of the statute, and made the defendant liable.”
 

 Castling
 
 v.
 
 Aubert
 
 (2 East., 325), presented the following facts: The plaintiff was a' broker, and had in his hands policies of insurance upon which he had a lien for certain acceptances he had given for one Grayson. The defendant, upon the plaintiff delivering him the policies that he might collect them, promised that he would provide for the acceptances as they
 
 *441
 
 became due. The plaintiff, being prosecuted on one of his acceptances, brought this suit to recover of the defendant upon his promise. It appeared that the defendant had collected the policies. This was held to be an original undertaking, and nor within the statute. It is true that it presented another ground upon which the recovery could be sustained, to wit, that the defendant had possessed himself of the fund created for the express purpose of meeting the debt, and this would sustain a count for money had and received. Lord Ellenborough puts it in both aspects, and says, at the close of his opinion, citing
 
 Williams
 
 v. Leper, that he agrees with that decision to the full extent of it. “I agree,” he says, “with those of the judges who thought the case not within the statute at all, and I also agree with the ground on which Mr.. Justice Aston proceeded, that the evidence sustains the count for money had and received.”
 

 A distinction had crept into the books founded upon a remark of Buller in
 
 Matson
 
 v.
 
 Wharam
 
 (2 Term R., 80), to the effect that, if the person to whose use goods are furnished or property delivered is liable at all, any other promise by a third person to pay that debt must be in writing, otherwise it is void by the statute of frauds; and upon this distinction the case of
 
 Croft
 
 v.
 
 Smallwood
 
 (1 Esp., 121), was decided. But this distinction was repudiated in the cases already cited, in all which it is manifest that the original debt was still subsisting and remained unaffected by the new undertaking; and in this State that precise point has been expressly adjudged in the case of
 
 Farley
 
 v. Cleveland, heretofore referred to, and in
 
 Rogers
 
 v.
 
 Kneeland
 
 (13 Wend., 114).
 

 The principle of the cases I have thus cited has been affirmed, and the doctrine fully recognized, in two or three modern English cases; among which are,
 
 Edwards
 
 v.
 
 Kelly
 
 (6 M.
 
 &
 
 Selw., 204);
 
 Bird v. Gammon
 
 (3 Bing., N. C., 883); and
 
 Walker
 
 v.
 
 Taylor
 
 (6 Carr.
 
 &
 
 Payne, 752), which is, perhaps, the most recent one, and is to the following effect: The widow of a publican employed an undertaker to conduct the funeral of her deceased husband, and deposited with him the licenses ■ of the
 
 *442
 
 house as a security for the payment of his bill. A, one of a firm who supplied the house with liquors, took out letters of administration oh the estate, and B, the other partner, promised the undertaker that, if he would give up the licenses to him, he would pay the funeral expenses. It was held that the undertaker, having surrendered the licenses, might recover his bill against B, although the widow was his employer and he had charged the administrator as his debtor. Tindal, Ch. J., said, on the trial: “ Here is a new contract, under a new state of circumstances. It has nothing whatever to do with the statute of frauds.”
 

 In view of these authorities, I think it may be safely affirmed that the rule in England is too well settled to admit of question that the promise in this case is not within the statute of frauds. No case that fairly holds the contrary has been produced, or even referred to, on the argument; and so well established does this doctrine seem to be, that the elementary writers substantially concur in the principle derived from them. Thus Chitty says: “Although the debt of another form the subject matter of the defendant’s undertaking, still, if he promised to pay the debt upon some new consideration raised by himself, and the consideration be
 
 the resignation of a charge or lien which afforded a
 
 remedy, or fund, to enforce the payment, the case does not fall within the statute.” (Chit. Cont., Springfield eds of 1851, p. 446.)
 

 Thus, also, Burge on Suretyship, 26, expresses in substance the same proposition: “ Though the debt of another may have been the original cause of the promise, yet, if the person to whom it is made
 
 relinquishes some right or advantage which he possessed,
 
 and which might have enabled him to obtain satisfaction óf his debt, the promise by a third party to pay the debt in consideration of such relinquishment- is an original promise, and not within the statute.” (See, also, Fell on Guar., chap. 2, §§ 7, 8, to the same effect.)
 

 The rule is, perhaps, still more clearly and strongly.stated by Addison, in his recent treatise on Contracts, who, on a collation of the authorities, both ancient and modern, states his
 
 *443
 
 conclusion in the following terms: “A contract or promise, although made concerning the debt or default of a third party, may yet be an original promise, not within the statute. If the plaintiff has a lien upon the property of his debtor in his possession, Or holds securities for the payment of his debt, and is induced
 
 to give up the lien,
 
 or part with his securities, upon the faith of the defendant’s promise to pay the debt, the promise so made is not within the mischiefs provided against by the statute, although the amount promised to be paid, on the surrender of the securities, may be the
 
 subsisting debt
 
 of the third party due to the plaintiff, and the possession of the promise may have the effect of discharging the debt.” (Add. on Cont., 38,'39.)
 

 To the English cases above cited and commented on, I add that of
 
 Barrell
 
 v.
 
 Trussell
 
 (4 Taunt., 117), where the same point is adjudged. It was a case where the plaintiff was about to sell the property of one Abbott, under a bill of sale executed to him by Abbott. Having taken the property, the defendant, in consideration that the plaintiff would relinquish the possession to Abbott, promised verbally to pay the plaintiff £122, being the debt of Abbott due to the plaintiff, and to collect which the plaintiff was about to make the sale. The plaintiff obtained a verdict, but, on a rule to show cause, the defendant insisted that the plaintiff was not entitled to recover because this was an agreement to answer for the debt of another, and there was no signature of the party sought to be charged. The counsel for the defendant, on the argument, insisted that here was no benefit derived to the defendant, as there was no delivery of the goods to the defendant; but Heath, J., said: “Therewas a detriment moving to the plaintiff, which is a good consideration; for in consequence of his forbearance, the goods were afterwards taken and sold on an execution against Abbott.” At a subsequent day the rule was' discharged, Mansfield, Ch. J., saying: “ What is this but the case of a man who, having the absolute power of selling goods, refrains upon the request of another ? It is not a promise to pay another’s debt.”
 

 The cases decided in this State, with perhaps an occasional
 
 *444
 
 exception, affirm the same rule, even if they do not carry the doctrine somewhat further. It will be sufficient for our present purpose, however, if they shall bé found to be substantially in accordance with the English cases. I will examine them very briefly:'
 

 Slingerland
 
 v.
 
 Morse
 
 (8 Johns. R., 463), is the earliest reported case where this question was presented. The plaintiff in that case had distrained the goods of his tenant for rent. The defendant agreed that he would deliver the goods in six days, or pay the amount of the rent, and thereupon the distress was abandoned and the goods left with the tenant. This was held to be an original, and not a collateral undertaking, and that no writing was therefore necessary. It was decided, substantially, upon the authority of
 
 Williams
 
 v.
 
 Leper.
 
 It has been said, in regard to this case, that it may perhaps be sustained on the ground that the goods were a fund in the hands of the defendant, from the possession of which his liability resulted. But, in answer to this, it is only necessary to say, that no such reason is given for the decision, and in the case it is expressly stated that the goods were left with the tenant.
 

 The cases of
 
 Skelton
 
 v.
 
 Brewster
 
 (8 John., 376), and
 
 Gold
 
 v.
 
 Phillips
 
 (10
 
 Id.,
 
 412), I do not cite in this connection; for, although they both recognize the doctrine of Chancellor Kent in
 
 Leonard
 
 v.
 
 Vredenburgh,
 
 and hold the promise good because it was founded upon a distinct consideration arising between the newly contracting parties, yet, as in both cases property had been delivered to the defendant to enable him to discharge the debt, they do not fall within that precise class to which this case belongs.
 

 The case of
 
 Chapin
 
 v.
 
 Merrill
 
 (4 Wend., 657), was an agreement to indemnify another for becoming the guarantor of a third; and it was held not to be within the statute, and is in point to show that it is not necessary that the defendant should receive any benefit from what was done by the plaintiff, the consideration in that case being purely harm to the plaintiff.
 

 Jackson
 
 v.
 
 Raynor
 
 (12 John., 291), is sometimes cited as conflicting with the prior cases of
 
 Skelton
 
 v.
 
 Brewster
 
 and
 
 Gold
 
 
 *445
 
 v. Phillips, and with the distinction I am seeking to illustrate. It clearly does not with the latter, for no lien was surrendered or benefit waived by the plaintiff. The case came fairly within that class where the agreement is valid by reason of property being placed in the hands of the promisor to pay the debt, in consideration of which he agrees to discharge it. The 'court put the decision, however, upon the express ground that the original debt was still subsisting; a distinction which is no longer recognized. There cannot be a doubt that, on the precise state of facts disclosed in that case, the decision would now be the other way.
 

 In the case of
 
 Gardiner
 
 v.
 
 Hopkins
 
 (5 Wend., 23), the plain tiff had a lien upon the sheets of a law-book he was printing for one Wiley, and the defendant promised that, if he would deliver the sheets, he would pay the balance of his account— the claim against Wiley still remaining in force. The case, as stated, leaves it a little uncertain whether the delivery was made to Wiley, or to the defendant, who was his assignee. The decision proceeded upon the ground that the plaintiff gave up what was claimed to be a valid hen, and the defendant derived a benefit from the surrender by obtaining the property. It is not a case proceeding upon the simple ground of a lien surrendered; although, if that had been the only feature presented, I think it clear the verdict would have been sustained.
 

 The case of
 
 Mercein
 
 v.
 
 Mack & Andrus
 
 (10 Wend., 461), presented the precise point. The plaintiff had a levy by virtue of an execution upon the property of one Reed; and one of the defendants "agreed that, in consideration of the release of the levy, the defendants would pay the plaintiff $150 at the expiration of some eighty days, or give their note for that amount. The judge at the trial ruled that a promise founded upon the consideration of surrendering up property levied on by execution is an original undertaking and need not be in writing; and on the other ground, of the partnership liability, he left it to the jury to say, upon the evidence, whether the firm was bound by what had been shown upon that point. A new trial was granted fora misdirection of the court upon this branch of the
 
 *446
 
 case; but upon the other, Chief Justice Savage stated that the ruling was right, and that a promise made upon such a consideration as appeared in the case was not within the statute of frauds. In reference to this case, it is said, in the able opinion of the Supreme Court given in the present case at the general term, that what was said by Judge Savage in his decision on this point was entirely obiter, and that he .cited no authority to support his conclusion. I cannot agree with the learned justice who gave the opinion, on this point. So far from the remark being
 
 obiter,
 
 the precise question was presented. If the ruling at the circuit had been wrong, that would have been an end of the case, and a new trial- would have been, perhaps, unnecessary on the other ground. If, however, it was to be sent back, it was equally necessary to determine the other question, which was vital to the maintenance of the action itself; and as to the remark that no‘authority was cited, the Chief Justice probably deemed that the doctrine had been so often and well settled as to have become almost elementary, and requiring no array of cases to sustain it.
 

 Indeed, so well had the rule been established, that in the case of
 
 Smith
 
 v.
 
 Weed
 
 (20 Wend., 184), the point was not even raised by the counsel on the argument. It presented the case of a naked paroi promise of a third person to pay the debt to the plaintiff, in consideration of the release of an attachment which the plaintiff had levied on the property of his debtor; and. the court held, without any hesitation, that the lien was valid, and the release thereof constituted a sufficient consideration for the undertaking of the defendant to pay the debt. Being an original promise, it was, of course, not within the statute.
 

 The last case which has arisen in our courts where this precise question has been presented, is,
 
 Fay
 
 v.
 
 Bell
 
 (Lal. Supp. to Hill & Denio, 251). The decision is brief, but emphatic, and is given by an able and eminent judge, who, until his recent lamented decease, continued, with intellectual vigor unimpaired, and natural force” almost unabated, by his large learning ' and ripened experience, to enlighten the tribunal over which
 
 *447
 
 he once presided. The facts were briefly these: One Daharch had employed the plaintiff to mend a pair of boots. The work had been done, and the boots remained in the possession of the plaintiff, and he had, of course, a lien for the amount of his charge. Upon the promise of the defendant to pay the demand, the boots were delivered, to Daharch. There was a recovery, and cm appeal it was' insisted that the promise was yvithin the statute of frauds; but the court held otherwise. Beardsley, J., who gave the decision, enters upon no argument to vindicate it. He simply says: “It was a new undertaking, founded on a new and distinct consideration, to wit, the relinquishment by the plaintiff of his lien on the boots, and which was sufficient to uphold the promise made. It was not within the statute of frauds.” He then adds the authorities, some ten or twelve in number, among which are several we have particularly considered. Here, then, is an opinion not obiter—not unsustained, but fortified by authority, and presenting a state of facts absolutely identical with the case now before us. The decision has never been questioned or doubted by any succeeding case;' and I propose to abide by it, as a clearly expressed, well considered and authoritative exposition of the law, and which determines the present case in favor of the plaintiff. Whatever we might be disposed to say of this as an original question—(and, were I at liberty to view it as such, I confess I should find difficulty in so construing the language of the statute as to exempt these cases from its operation)—I think the current of authority has too long and steadily set in' one direction to be now turned aside, and that the rule stands too firmly, not only
 
 '■'■super
 
 antiguas,” but
 
 “super novas vias,"
 
 to be disturbed.
 

 I need scarcely add, that the cases of
 
 Barker
 
 v.
 
 Bucklin
 
 (2 Denio, 45), and
 
 Brewster
 
 v.
 
 Silence
 
 (4 Seld., 207), to which we have been referred by the defendant’s counsel, hold no doctrine whatever inconsistent with the great “ cloud of witnesses ” that have been summoned to the stand. The former case was where property had been sold to the defendant, in consideration of which he promised to pay the debt of the party delivering the
 
 *448
 
 property, to the plaintiff. It was not a promise to pay the debt of a third party merely, but was, in effect, an agreement to pay the defendant’s own debt. The case was rightly decided upon all the authorities, and it was unnecessary to go beyond .this simple and plain proposition to uphold the recovery. The case of
 
 Brewster
 
 v.
 
 Silence
 
 is purely" that of a naked written guaranty to pay another’s debt, expressing no consideration. The court held that the consideration could not be supplied by paroi proof. There was no pretence that, in consideration of the undertaking, any lien was surrendered or right relinquished which the plaintiff held, and which was operative in his hands, Some evidence was attempted to be given on the trial that the property was placed in the hands of the defendant, on which fact his undertaking was founded; but the Court of Appeals held that this was not only outside of the issue, but that the evidence given did not conduce to prove the point sought .to be established. This case also finally settled the doctrine which had been floating loosely through the Reports, that a guaranty could not be changed into a promissory note so as to ■charge the party„by some other contract than the one he had in fact entered into; but beyond this, and the other proposition that a guaranty which does not express the consideration is void under the statute'of frauds, the case is not to be invoked as authority. The decision is not, therefore, in conflict with the rule which is to be applied to this case, which is controlling upon the question before us.
 

 My opinion is, that the judgment should be reversed, and a new trial granted, with costs to abide the event.
 

 Davies and Weight, Js., concurred in this opinion.
 

 Judgment affirmed,